Adler v. Dalton.

*Judgment affirmed.*

## Peter P. Adler, Imp'd, etc.,
### v.
## Dennis Dalton.

*Mortgages—Rights of Second Mortgagee—Fraudulent Conveyance—Notice—Interest—Discretion—Petition for Rehearing.*

1.   Where, after a foreclosure, the mortgagor recovers the title in his own name, a second mortgage containing a covenant of warranty at once attaches.

2.   Declarations made by the vendor of real property after the conveyance thereof, are inadmissible to affect the vendee's title.

3.   Upon a bill filed by a second mortgagee to set aside a conveyance by one who had held a prior incumbrance, and had acquired title by trustee's sale, to the son of the mortgagor, it is *held:* That said conveyance was fraudulent, being for the benefit of the mortgagor; and that the grantee in a conveyance made after the filing of the bill, had actual notice of the complainant's rights, and is not entitled to any relief on account of the purchase money paid by him.

4.   On petition for a rehearing it is further *held:* That the decree protects a mortgage given by the son to his vendor, the holder of the original incumbrance, and the interest thereon from the date of the conveyance by the son; that if the vendee of the son desired protection as to interest paid by him on the mortgage which he assumed, he should have asked it in his answer; and that the discretion of the court below, as to costs, was not abused.

[Opinion filed May 27, 1887.]

APPEAL from the Circuit Court of Will County; the Hon. DORRENCE DIBELL, Judge, presiding.

Messrs. HOUSE, FEY & BABB and THOMAS H. HUTCHINS, for appellant.

Messrs. HALEY & O'DONNELL, for appellee.

LACEY, J.   An original bill was filed March 15, 1881, showing the following facts:   On the 17th day of August, 1874, the appellee became the mortgagee of a certain tract of land, being forty-seven and thirty-two one hundredths acres situated in the County of Will, near the City of Joliet, from Susan and John Roane, who were husband and wife, and seized in fee of said land prior to the execution of the said mortgage.   The said mortgage was made to secure the sum of $770 loaned by the appellee to said mortgagors and for which they executed their note to the appellee for that sum, due in one year from date, with ten per cent. interest from date, being even date with the mortgage, which mortgage was duly recorded.   A mistake was made in the description of the land which was mutual.   The said mortgage contained the usual covenants of warranty.   One Garrett Van Horn, who had had a prior incum-

brance of $1,500 on the said land in the form of a trust deed, having acquired title by virtue of a trustee's sale, on account of the failure of said Susan and John Roane to pay said last named incumbrance, conveyed the said land to John Roane, Jr., a son of Susan and John Roane. The bill alleges that the said deed was without consideration; that said John Roane, Jr., had no means to pay for the said real estate and did not in fact pay for it but was only holding it in trust for the use and benefit of his father; that said John Roane, Jr., took the title to the said real estate with full knowledge of all the rights of appellee, legal and equitable; that since the last named transfer, said Susan Roane had died leaving certain heirs which are named and made parties to this suit. Prays that the said last named transfer may be set aside; that the mistake made by the scrivener in drawing appellee's mortgage may be corrected and his mortgage foreclosed.

On January 7, 1886, appellant asked to become a party defendant to said bill on his own petition, which the court allowed on February 24, 1886, and ordered him to answer. The answer of John Roane, Jr., shows that he had sold the land to appellant, April 22, 1881, and conveyed the same to him in good faith and had delivered possession to him for $2,943, but that $1,500 of the consideration was assumed by appellant, which said Roane, Jr., had given to Garrett Van Horn for the purchase money of the land, and which was a prior mortgage, and said Roane, Jr., had no title or interest in the land. Appellant also answered. On April 29, 1886, appellee, by leave, amended his bill of complaint which avers knowledge on the part of appellant of all appellee's equities, and reiterates the charge that John Roane, Jr., "took the legal title to said real estate in his own name for the purpose of protecting his father, John Roane, Sr., against your orator's claim and that of his creditors, with the intention of conveying the same to his father, John Roane, Sr., and the said John Roane, Jr., held said title in trust." On the answer of the various parties and the evidence, the cause went to trial on April 29, 1886, resulting in a decree in favor of appellee and a foreclosure of his mortgage amounting, principal and interest, to $835.29, subject to the Garrett Van Horn mortgage of $1,500.

From this decree the appellant takes an appeal to this court. The evidence shows that the appellee's mortgage was subsequent to the one to Van Horn, and that Van Horn had foreclosed his trust deed by sale of the land which apparently annulled the title of John Roane. Sr., and also the mortgage of appellee. But John Roane, Sr., was not satisfied with allowing the land to go for the price paid for it by Van Horn and made an effort to recover the title. Now, it is evident that if John Roane, Sr., had recovered the title of the property in his own name, the mortgage of appellee would at once attach on account of the covenants of warranty in his mortgage from John Roane, Sr., and Susan Roane. Besides, it was an obligation on the part of Susan and John Roane, Sr., to pay off the Van Horn mortgage, which by the covenants of quiet enjoyment and against incumbrances in their mortgage to him, they had undertaken to do.

The vital issue in this case is whether the charges of the bill are correct, that by procurement of John Roane, Sr., his son stepped in to hold the title in his own name for his father in order to prevent this result. If the proof shows that he did, then clearly the decree is correct. In our opinion there can not be much doubt but that the proof fully sustains the allegations of fraud, and that appellant on his part had full knowledge of appellee's claim, having read a copy of the original bill filed herein before he purchased, and had notice of it otherwise.

Neither can there be much doubt that the property was worth a great deal more than the amount of the original Van Horn mortgage, and that John Roane, Sr., was claiming over $300 rebatement of Van Horn's claim for usury taken by him and was claiming some other irregularities in the trustee's sale. Garrett Van Horn yielded to this demand and agreed to reconvey the land to John Roane, Sr., for the original sum of the mortgage, same interest, the evidence not disclosing how much had been paid by Susan and John Roane before the sale under the trust deed. Now, in all good conscience, the appellee should have had the benefit of this favorable compromise, but after the negotiations had all been made and every-

Adler v. Dalton.

thing arranged, instead of the deed having been made to John Roane, Sr., according to agreement, young John Roane, his son, a young man without means or any business qualifications whatever, living with his father and mother as a member of the family, only twenty-three years old, steps in and takes the title to the land in his own name, and gives his note and executes a mortgage back on the land to Van Horn for the $1,500, the entire purchase price, and the advanced interest required to be paid was, as we think the evidence shows, paid out of the money received from the sale of one of his father's horses. It would seem that these facts appearing without further evidence would be almost, if not quite, sufficient to stamp the transaction as a fraud and a device to prevent appellee from realizing on his mortgage lien. The son was aware of all these circumstances and must have been aware of the fraudulent intent of his father—must have known or at least thought that there was a large margin over the purchase price in the property, i. e., above the Van Horn claim; and must have known the reason why his father was putting the title in his name. The appellant paid $2,943 for the property and all but the $1,500, which was the original purchase money due Van Horn represented by young John Roane's note and mortgage, was paid in cash by appellant, as he says, to John Roane, Jr., and the Van Horn mortgage he assumed.

Thus without the outlay of $1, young Roane pockets the sum of $1,443. Can it be believed that John Roane, Jr., kept this money? Without much doubt it found its way to his father's pocket. And Walsh testifies that John Roane, Jr., told him that he did not get a nickel out of the sale of the land, only $75.

This is objected to by appellant as being after he had purchased and we must exclude it.

But it is what we are convinced of without such testimony. We are not obliged to rely entirely on these circumstances to show with what intent the son took the title. Walsh testifies that John Roane said in the presence of his son that the reason he had the title taken in the latter's name was " to keep any one else from coming on."

"From the conversation with me and young John, he, the father, always seemed to be the one that was interested;" "young John didn't seem to care anything about it but the old man seemed to be the one that was interested."

It seems, too, from Walsh's evidence, the moulding business was carried on in young John's name, but the young man would never do anything without consulting his father, and that they both told him that "this business was thus carried on in the son's name because the old man had debts against him that he was unable to pay and the parties were crowding him." Walsh also in his oral examination says, that about the time of the foreclosure of the Van Horn mortgage, shortly after that, he had a conversation "with John Roane, Sr. and Jr., and John Roane, Sr., told me that he took the title to the property in his son's name to shut out creditors, but not Dalton."

We infer this was said in presence of John Roane, Jr. There was enough of this conversation in presence of John Roane, Jr., to which he made no denial, having long before appellant's purchase of the land, to the competency of which there can be no objection, taken in connection with the other facts and circumstances, to clearly prove that John Roane, Jr., had no personal interest in the land and that he was acting as a mere cover for his father to keep off creditors. If John Roane, Jr., paid any interest on the notes he gave to Van Horn out of his own funds, it was done in attempting to commit a fraud on his father's creditors and he can not be allowed anything for it. But we are inclined to think he paid none of his own money.

Appellant having purchased the land and paid out $1,443 for it with full knowledge of appellee's claims, did it at his own peril, and can not be allowed any relief on account of such payment. It was eminently proper to order the land sold subject to the Van Horn mortgage, for the origin of such mortgage was long prior to appellee's mortgage, it being a prior lien.

The deed from Murphy to Susan Roane failed to properly describe the land, hence it appears that she had no title. The heirs of Mrs. Roane, who were parties, are making no objec-

tion by any appeal from this proceeding. The appellee derives his equities through John and Susan Roane's warranty mortgage. If either one of them should, after the title passed out of them by the trustee's sale, acquire a title to the land, the whole title must inure to appellee under the warranty in the mortgage to him, John and Susan each executing the mortgage jointly to and for the benefit of appellee, so that can make no difference about Mrs. Roane's interest. There are some minor objections of a technical character not going to the merits of the case and not affecting the rights of appellee on this appeal that we do not think necessary to notice particularly.

Believing that justice has been done, the decree of the court below is affirmed.

*Decree affirmed.*

*Per Curiam.* A petition has been presented for a rehearing based upon the supposed error or oversight of this court in not noticing that the decree of the court below did not save the rights of appellant in the interest which he had paid on the Van Horn mortgage which he assumed at the date of his purchase, April 22, 1881, together with the principal of said note and mortgage.

This matter was not very particularly brought to the attention of this court in appellant's brief, and we failed to notice the matter particularly further than to approve the decree. Since the filing of the petition we have looked into the matter again and are of the opinion that there was no error in the decree in that regard. It appears that the note and mortgage from John Roane, Jr., to Van Horn, was executed in 1879, and that he paid the interest thereon till he sold the land to appellant April 22, 1881, amounting to $180, at the rate of six per cent. interest per annum, payable semi-annually. This amount, we hold, was in reality paid by his father, in fraud of appellee's rights. Since that time the appellant assumed to pay the mortgage and interest.

Appellant filed his answer to this bill April 28, 1886, within a few days of the entry of the decree which was entered May

8, 1886, in which he sets up his purchase and shows the assumpsit of the $1,500 mortgage given by young Roane to Van Horn from the date of his purchase, but in such answer he does not set up or claim that he had paid any interest on the note or that he desired the protection of the court in the premises, by way of subrogation or otherwise.

Under this state of pleading the court was not bound to take notice that appellant had paid any interest on the note of Van Horn or guard particularly his claims of subrogation.

If he had desired such protection he should have asked for it in his answer. What any witness may have testified to as to his payments of interest, was not sufficient, without any answer asking protection, to set the court in action to protect him.

But aside from this, we are of the opinion that the decree does protect the Van Horn mortgage and all the interest thereon from the time that appellant assumed its payment, April 22, 1881.

The decree recites the purchase of the mortgage on April 22, 1881, and its assumption by appellant at that time, and does not find that any interest had been paid.

Then it orders the land sold subject to such mortgage. This covers everything, and no matter if appellant pays the interest as it becomes due, he and the holder of the mortgage could claim the entire amount against any purchaser under the decree. The matter of costs was discretionary with the Circuit Judge, and we do not think such discretion was abused. Seeing no sufficient cause for a rehearing the petition is denied.

*Petition for rehearing denied.*